1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  KATHLEEN ELLIS,

12              Plaintiff,

13      v.                              NO. CIV. S-05-559 LKK/GGH

14  HOLLISTER, INC., et al.,

15              Defendants.
   _____/
16  BRENDA DIMARO; and HALLIE LAVICK,

17              Plaintiffs,

18      v.                              NO. CIV. S-05-1726 LKK/GGH

19  HOLLISTER, INC., et al.,
                                          O R D E R
20              Defendants.
   _____/
21

22       Plaintiffs Kathleen Ellis, Brenda Dimaro, and Hallie Lavick

23  ("plaintiffs") bring this action against defendants Hollister,

24  Inc., Hollister Employee Share Ownership Trust, John Dickinson

25  Schneider, Inc. ("JDS"), Samuel Brilliant, James A. Karlovsky,

26  James McCormack, and Richard Zwirner alleging violations of the

                               1

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et. seq. Plaintiff Ellis additionally contends that defendants approved a series of Superior Court Domestic Relations Orders (DROs) issued pursuant to her divorce proceedings that she claims do not comply with ERISA and the terms of the Plan.[1]

Pending before the court are defendants' motions to dismiss.

## I.

## PLAINTIFFS' ALLEGATIONS[2]

These two cases concern Hollishare, the Hollister Employee Share Ownership Trust, an employee-profit sharing plan governed by ERISA.

Plaintiffs allege that JDS is the parent company of Hollister and a de facto fiduciary of the Plan by virtue of its ability to control management and disposition of trust fund assets, to artificially limit the value of JDS shares to "book value," to retain the right to buy all shares of JDS stock, and to limit the

////

////

---

[1]   Although the court has not previously considered the instant cases, it has issued an order in a related case DeFazio v. Hollister, Inc., et al., No. Civ. S-04-1358, denying defendants' motion to transfer venue, but granting defendants' motions to dismiss causes of actions related to ERISA prohibited transactions and stock valuation because they were barred by the statute of limitations. The court, however, denied defendants' motions to dismiss DeFazio's QDRO claims.

[2]   The summary of plaintiffs' allegation is derived from Dimaro's and Lavick's complaint and from Ellis' first amended complaint. Dimaro's and Lavick's complaint contain similar, if not identical, allegations to Ellis' first amended complaint. Ellis filed her complaint two months prior to Dimaro and Lavick.

1  pool of available buyers.[3]   Plaintiffs further allege that

2  Brilliant, McCormack, Karlovsky, Zwirner, Winn, Stempinski, Matson

3  and Herbert are current and former trustees of the Plan and named

4  fiduciaries of Hollishare, and that plaintiffs are all participants

5  of the Plan.  See 29 U.S.C. § 1002(7).

6      Plaintiffs allege that the individual defendants breached

7  their fiduciary duties by assigning "book value" to Hollishare's

8  assets without a diligent and prudent investigation and without an

9  independent third-party appraisal.  Plaintiffs additionally allege

10 that when they retired from Hollister, the trustees inappropriately

11 determined the final value of their individual accounts in the

12 Hollishare plan based on book value, a figure that did not

13 accurately reflect the true market value of the shares.[4]

14 ////

15

---

16    [3] As the court explained in DeFazio, "book value" is defined
   as a method or formula used to determine the value of corporate
17 stock.  As I noted in the previous order, it appears that "[t]he
   term 'book value' has no generally accepted meaning; its
18 significance varies according to the particular definitions or
   stipulations under which it is to be determined."  51 A.L.R.2d 606
19 §2.  "'[T]he law does not define 'book value' as denoting a
   particular method of arriving at the value of fixed or other assets
20 of a corporation.'"  Id. (quoting Lassallette v. Parisian Baking
   Co., 110 Cal.App.2d 375 (1952)).  "[G]enerically and irrespective
21 of ultimate form, the term contemplates a theoretical value
   resulting from depreciation or appreciation as computed upon an
22 originally determined base.  The formula whereby variation from the
   base figure is to be determined is supplied by some form of
23 stipulation or acquiescence, either through express provisions of
   some kind, or through acceptance of particular accounting
24 procedures previously applied."  Id.  See Order at 3.

25    [4] Ellis' complaint alleges that she retired from Hollister
   on June 3, 2004.  It is unclear from Dimaro's and Lavick's
26 complaint when they retired.

3

1  Defendants allegedly failed to undertake an independent evaluation

2  to determine the true value of the shares as required under the

3  Plan, and thus, the amounts paid to plaintiffs do not reflect

4  "adequate consideration" as defined under 29 U.S.C. § 1002(18).

5      Plaintiffs further maintain that defendants engaged in

6  prohibited transactions with JDS, a party in interest, to the

7  detriment of plan participants and beneficiaries.  Plaintiffs

8  allege that these transactions allowed "assets of the plan to

9  wrongfully inure to the benefit of JDS."  Defendants allegedly

10  purchased employer stock from plaintiffs and others for less than

11  adequate consideration and that they subsequently sold these stocks

12  to JDS at a price reflecting so-called book value, rather than a

13  "price not less favorable to the plan than the offering price for

14  the security as established by the current bid and asked prices

15  quoted by persons independent of the issuer and of any part in

16  interest." See 28 U.S.C. § 1002(18).  Plaintiffs explain that JDS'

17  Articles of Incorporation reinforce such transactions by granting

18  JDS a right of first refusal, a buy-back provision, and a

19  restriction on ownership of their common stock.  According to

20  plaintiffs, "defendants are using the plan as a personal holding

21  company, and as a billion dollar tax shelter."  Plaintiffs allege

22  that because defendants improperly valued the Plan's assets and

23  allowed the assets to revert back to the plan sponsor, plaintiffs'

24  retirement benefits were improperly valued.

25      In addition to these allegations, Ellis' complaint contains

26  claims specific to her lawsuit, which relate to various Domestic

4

1  Relations Orders entered by the state court upon her divorce.  She

2  alleges that on January 16, 1998, the Superior Court of California

3  entered no fewer than eight Domestic Relations Orders

4  ("DROs")(seven support DROs and one community property DRO) which

5  distributed to Jim DeFazio ("DeFazio"), her former husband, his

6  alleged community property share of her vested benefits in

7  Hollishare.  The Superior Court ordered that DeFazio, as an

8  alternate payee of the Plan[5], should have his interest held in a

9  "segregated account" and credited with a "proportionate share of

10 earnings, interest, gains, losses allocated to . . . [Ellis']

11 account from each full plan year from January 1, 1998 to the date

12 of segregation."  Ellis maintains that ERISA plans are required to

13 comply with any valid "qualified" domestic relation order

14 ("QDRO").[6]  Ellis contends, however, that, as plan administrator,

15 defendants were responsible for determining whether the

16 requirements for qualified status were satisfied.  Ellis asserts

17 that trustees of the Plan acted on the Superior Court orders

18 despite the fact that do not comply with the requirements of ERISA

19 and the terms of the Plan.

---

20

21  [5]  As the court previously noted in the <u>DeFazio</u> order, the
term "alternate payee" for ERISA purposes means any spouse, former

22  spouse, child, or other dependent of a participant who is
recognized by a domestic relations order as having a right to

23  receive all, or a portion of, the benefits payable under a plan
with respect to such participant."  29 U.S.C. § 1056(d)(3)(K).

24  [6]  A DRO is a QDRO if it creates or recognizes the existence
of an alternate payee's right to, or assigns to an alternate payee

25  the right to, receive all or part of the benefits payable with
respect to a participant under an ERISA plan.  Ellis Compl. at 11,

26  citing 29 U.S.C. § 1056(d)(3)(B).

1                                      **II.**

2                                   **ANALYSIS**

3          Defendants contend that plaintiffs fail to state a claim under

4   ERISA and urge the court to dismiss plaintiffs' lawsuits.  As a

5   threshold matter, I note that defendants raise arguments which the

6   court previously rejected in <u>DeFazio</u>.  I address those arguments

7   before turning to new arguments raised by defendants.

8   **A.    VALUATION OF JDS SHARES AT BOOK VALUE AND PROHIBITED
           TRANSACTIONS**

9

10         ERISA is a "comprehensive statute designed to promote the

11  interests of employees and their beneficiaries in employee benefit

12  plans." <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 90 (1983);

13  <u>Nachman Corp. v. PBGC</u>, 446 U.S. 359, 375 (1980).  One of the

14  primary purposes for the enactment of ERISA was to establish

15  "standards of conduct, responsibility, and obligation for

16  fiduciaries of employee benefit plans."

17         I turn first to plaintiffs' allegations that defendants

18  breached their fiduciary duties by assigning "book value" to

19  Hollishare's assets without a diligent and prudent investigation

20  and without an independent third-party appraisal, and when they

21  then entered into transactions with JDS.

22         Section 406 of ERISA, 29 U.S.C. § 1106, establishes a blanket

23  prohibition against certain transactions, such as the sale of stock

24  to an ERISA plan by a party in interest, because of the high

25  potential for abuse.  ERISA does, however, provide an exemption

26  from § 406 for these types of transactions if they meet certain

                                        6

requirements.  <u>See</u> ERISA § 408(e), 29 U.S.C. § 1108(e).  Section
408(e) provides an exemption for the sale or acquisition by a plan
of employer stock if the sale price is for "adequate
consideration."  29 U.S.C. § 1108(e).  When the security is not
traded on a national securities exchange, the term "adequate
consideration" means "a price not less favorable to the plan than
the offering price for the security as established by the current
bid and asked prices quoted by persons independent of the issuer
and of any party in interest."  29 U.S.C. § 1002(18).  Plaintiffs
in the instant cases, like DeFazio, state a cognizable claim
because they allege that HolliShare sold stock to its parent
corporation, JDS, for less than adequate consideration.

   As they did in <u>DeFazio</u>, defendants defend the challenged
transactions on the grounds that the valuation of stock based on
"book value" constitutes adequate consideration.[7]  They also assert
that plaintiffs' claims fail because "defendants have not engaged
in any prohibited transactions."  Defs.' Mot. to Dism. in <u>Ellis</u> at

---

   [7] Defendants submit various documents, including JDS'
Articles of Incorporation and other documents that purportedly
support their assertion.  These arguments were rejected by this
court in <u>DeFazio</u>.  The court thus has no qualms in using the same
language here to resolve the instant motion to dismiss.  In this
round of briefing, however, defendants contend that they believe
that the court used the wrong definition of "adequate
consideration."  They contend that the court inappropriately used
ERISA § 318(A)(29 U.S.C. § 1002(18)(A)) which they argue only
applies in the case where there is generally a recognized market.
<u>See</u> Defs.' Mot. to Dism. in <u>Dimaro</u> at 22, n. 12.  Whatever the
definition, whether defendants' utilization of book value
constitutes "adequate consideration" is a question requiring
examination of evidence and the merits, thus precluding dismissal
at this stage.

7

29, <u>Dimaro</u> at 20-22.  Defendants' arguments are unavailing.  As the court explained in <u>DeFazio</u>, to consider their arguments would require the court to examine the merits of the case, which is not appropriate on a motion to dismiss.[8]  Plaintiffs have stated a valid claim under ERISA § 408(e), 29 U.S.C. 1108(e).

**B.  ELLIS' QDRO CLAIM**

ERISA provides for state court-ordered assignments of plan benefits to former spouses and dependents.  29 U.S.C. § 1056(d)(3) provides that pension plans "shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order ("QDRO")."  QDROs are a type of Domestic Relations Order ("DRO") relating "to the provision of child support, alimony, or marital property rights to a spouse, former spouse, child, or other dependent of a plan participant . . . made pursuant to a State domestic relations law."  29 U.S.C. § 1056(d)(3)(ii).

A DRO is a QDRO if it "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or part of the benefits payable with respect to a participant under a[n] [ERISA] plan," 29 U.S.C. § 1056(d)(3)(B), and does not (1) require the plan to provide any

---

[8]  A fiduciary who claims that a transaction is exempted from the prohibitions of ERISA § 406 has the burden of proving that the stock was purchased for no more than adequate consideration.  <u>Lowen v. Tower Asset Management, Inc.</u>, 829 F.2d 1209, 1215, (2d Cir. 1987); <u>Donovan v. Cunningham</u>, 716 F.2d 1455, 1467-68 (5th Cir. 1983).  For the exemption of ERISA § 408(e) to apply, fiduciaries must: (1) engage in a prudent investigation; and (2) pay no more than fair market value for the securities purchased.

type of benefit not otherwise provided, (2) require the plan to provide increased benefits, or (3) require benefits to be paid to an alternate payee which must be paid to another alternate payee under another QDRO.  29 U.S.C. § 1056(d)(3)(D).  Finally, a QDRO must specify the name and mailing address of the alternate payee and the affected plan participant, the amount or percentage of the participant's benefits to be paid or the means by which that amount will be determined, the number of payments or time period to which the order applies, and the plan to which the order applies.  29 U.S.C. § 1056(d)(3)(c).  Ellis alleges that the series of DROs issued pursuant to her divorce proceedings do not comply with these requirements and are therefore not QDROs.

Ellis asserts that on January 16, 1998, the Superior Court of California entered no fewer than eight DROs which distributed to Jim DeFazio, her former husband, his alleged community property share of her vested benefits in Hollishare" Ellis maintains that ERISA plans are required to comply only with valid QDRO.[9]  Ellis contends that as plan administrator, defendants were responsible for determining whether the requirements for qualified status were satisfied, and that trustees of the Plan failed to do this, and that the DROs do not comply with the requirements of ERISA and the terms of the plan.

Defendants argue that Ellis' amended complaint fails to provide them with adequate notice of her claim and that the court

---

[9]   See supra note 5.

9

should therefore dismiss her QDRO claim.  I cannot agree.  Fed. R. Civ. P. 8(a)(2) requires only notice pleading, "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Rule's standard only requires that "the averments of the complaint sufficiently establish a basis for judgment against the defendant."  <u>See</u> <u>Yamaguchi v. United States Depot of the Air Force</u>, 109 F.3d 1475, 1481 (9th Cir. 1997).  The court is required to take all allegations of material fact in the complaint as true and construe them in the light most favorable to Ellis.  <u>Jensen v. City of Oxnard</u>, 145 F.3d 1078 (9th Cir. 1998).  Where, as here, Ellis has alleged that defendants have failed to ensure that the state court DROs were "qualified," she has provided "a short and plain statement of her claim that would give defendant fair notice of what her argument is and the legal grounds upon which it rests.  <u>Coney v. Gibson,</u> 355 U.S. 41, 47 (1957).  Defendants' motion to dismiss Ellis' QDRO claim must be DENIED.

**C.  STANDING TO SUE UNDER ERISA**

Defendants argue that plaintiffs lack standing to sue under ERISA.  Relying on <u>Kuntz v. Reese</u>, 785 F.2d 1410 (9th Cir. 1986), defendants claim that plaintiffs lack standing because they have retired and they requested and received a full distribution of their vested benefits.  They argue that under the statute, plaintiffs are not "participants" under ERISA and cannot bring suit.[10]  Again, I cannot agree.

---

[10]  Under ERISA, a civil action may be brought by either a participant, beneficiary, or fiduciary.  <u>See</u> ERISA § 502, 29 U.S.C.

1   The Supreme Court has explained that in the ERISA context

2   "participant" means either "employees in, or reasonably expected

3   to be in, currently covered employment," or "former employees who

4   "have . . . a reasonable expectation of returning to covered

5   employment" or who have "colorable claim[s] to vested benefits."

6   Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117-118

7   (1989)(citations omitted).  Plaintiffs contend that they are

8   participants as defined by ERISA because they have "colorable

9   claims" to vested benefits.  It is correct, as defendants maintain,

10  that in Kuntz the Ninth Circuit held that plaintiffs there lacked

11  standing where their benefits were distributed in a lump sum, and

12  they were no longer plan participants.  The Circuit explained that

13  the plaintiffs were not eligible to receive benefits because if

14  successful, their claims would result in a "damage award," "not an

15  increase of vested benefits."  785 F.2d at 1411.  The court

16  stressed that the Kuntz plaintiffs - unlike the plaintiffs in the

17  cases at bar – "do not allege that their vested benefits were

18  improperly computed."  Id.[11]  The Circuit has distinguished Kuntz

19  and allowed suit even when plaintiffs have received their vested

20  benefits if they allege that fiduciaries "personally profited" from

21  a beach of their duty of loyalty to the plan.  Amalgamated Clothing

22  _____

23  § 1132.  Plaintiffs allege in their complaint that they are
    "participants" under the plan.  Ellis Compl. at 4; Dimaro and
24  Lavick Compls. at 3.

25  [11]  The court reiterated that plaintiffs "already received
    their vested benefits," "accepted the payment of everything due to
    them in a lump sum," and "received the full extent of their
26  benefits."  Kuntz, 785 F.2d at 1411-12.

11

1   <u>v. Murdock</u>, 861 F.2d 1406, 1418 (9th Cir. 1988).[12]  The court

2   emphasized that the "critical difference" between <u>Kuntz</u> and the

3   case in <u>Amalgamated Clothing</u> was that although the <u>Kuntz</u> plaintiffs

4   alleged that plan fiduciaries had "lied about the amount of

5   benefits that plaintiffs would get under the plan and failed to

6   comply with ERISA," "the <u>Kuntz</u> plaintiffs <u>did</u> <u>not</u> allege that the

7   fiduciaries <u>personally</u> <u>profited</u> from a breach of their duty of

8   loyalty to the plan." <u>Id</u>. at 1418 (emphasis in original).  Despite

9   the previous distribution of plan assets, the court concluded that

10   plaintiffs had standing to sue under such facts.  <u>Id</u>. 1418-19.

11       Defendants in the case at bar adamantly urge this court to

12   follow <u>Kuntz</u> because they argue, <u>inter</u> <u>alia</u>, that <u>Amalgamated</u>

13   <u>Clothing</u> is no longer good law.  I cannot agree.  The Ninth Circuit

14   has continued to reject the <u>Kuntz</u> doctrine where plaintiffs, former

15   employees who have received lump sum payments for their benefits,

16   allege that defendants have profited and that payment of plan

17   benefits was part of the fiduciaries' scheme to misuse plan assets.

18   <u>See</u> <u>Waller v. Blue Cross of California</u>, 32 F.3d 1337, 1339 (9th

19   Cir. 2004)(holding that even after defendants had terminated its

20   retirement plan, plaintiffs had standing to bring suit under ERISA

21   to pursue "equitable remed[ies] of a constructive trust to

22

23       [12]   In <u>Amalgamated Clothing</u>, plaintiffs alleged that plan
fiduciaries breached their duty of loyalty to the plan by using

24   plan assets to further the interests of David H. Murdock, another
plan fiduciary, rather than to further solely the interests of the

25   plan participants and beneficiaries as required by ERISA.  <u>Id</u>. at
1408. The Ninth Circuit explained that were it to find for

26   defendants and conclude that plaintiffs did not have standing to
sue they would allow fiduciaries to "misuse ERISA plan assets."

distribute defendants' allegedly ill-gotten profits to the former participants and beneficiaries of the Plan").  In the cases at bar, plaintiffs allege that defendants were fiduciaries by virtue of their roles as trustees and administrators of the Hollishare Plan. Ellis Compl. at 3; Dimaro Compl. at 3.  Plaintiffs also allege that defendants sought to profit by breaching their fiduciary duties by valuing JDS stock which "did not accurately reflect the true market value of the shares."  Ellis Compl. at 6; Dimaro Compl. at 4. Plaintiffs further allege that by doing so and by granting JDS the right of first refusal and restricting ownership on common stock, defendants are "using the Plan for their benefit" - instead of the exclusive benefit of participants and beneficiaries.  Ellis Compl. at 7; Dimaro Compl. at 4.  According to plaintiffs, these actions allow defendants to "use the Plan as a personal holding company, and as a billion dollar tax shelter."  Id.  Finally, plaintiffs pray for the equitable remedy of disgorgement of defendants' ill-gotten profits.  Ellis Compl. at 14; Dimaro Compl. at 7.

Plaintiffs' allegations place their cases directly within the purview of Amalgamated Clothing and Waller.  I conclude that plaintiffs have standing as "participants" to proceed with their lawsuits.

**D.   THE SETTLOR DOCTRINE**

Defendants maintain that plaintiffs challenge the "design" of Hollishare, and that as a matter of law, plaintiffs' claims cannot
////
////

lie under the "Settlor Doctrine."[13]  Defendants argue that they are charged with "nothing other than having administered the Plan in compliance with its express terms."  As defendants put it, plaintiffs' claims attack "only the fundamental design of the Plan, specifically the method by which the Plan provides the JDS shares held by it are to be valued."  As I explain below, defendants' argument are unavailing on several bases.

ERISA provides that a "'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the

---

[13]   Section 7.03 of the Plan, provides:

7.03 The assets in the Trust Fund shall be valued by the Trustees at their respective fair market values as of each December 31st.  The fair market value of Common Shares of JDS Inc. held in the Trust Fund shall, subject to the provisions of the remainder of this Section 7.03, be their book value as of the valuation date as reflected on the books of JDS Inc.  The Trustees shall accept such book value as the fair market value if such book value is computed in accordance with generally accepted accounting principles.  If such book value was not computed in accordance with generally accepted accounting principles, the Trustees shall investigate the actual method of computation.  If after investigation they determine that such book value fairly reflects the value of the shares under the circumstances, they shall make such adjustment thereto, taking into consideration generally accepted accounting principles, as they deem reasonable and appropriate to fairly reflect the value of the shares under the circumstances, provided however, that such adjustment shall not exceed the difference between such book value and book value computed in accordance with generally accepted accounting principles.

14

administration' of the plan." <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 498 (1996)(quoting ERISA § 3(21)(A), 29 U.S.C. § 1102(21)(A)).

On occasion, courts have suggested that defendants cannot be held liable for breach of fiduciary duty under ERISA for design decisions when the fiduciary is acting in his or her "settlor capacity." <u>See</u> <u>Hughes Aircraft Co. v. Jacobsen</u>, 525 U.S. 432, 444 (1999); <u>see also</u> <u>Lockheed Corp. v. Spink</u>, 517 U.S. 882, 890-91 (1996)(holding that the act of amending a plan to establish early retirement programs did not trigger ERISA's fiduciary duties); <u>Bins v. Exxon Co.</u>, 220 F.3d 1042, 1047 (9th Cir. 2000)("[A]n employer does not act in its fiduciary capacity as a plan administrator when it makes a business decision to amend a plan.").

Defendants direct the court to <u>Wright v Oregon Metallurgical Corp.</u>, 360 F.3d 1090 (9th Cir. 2004), where the issue before the court was whether an ERISA violation occurred when the fiduciaries and plan administrators failed to amend the stock bonus plan to allow participants to sell a higher percentage of employer securities than permitted by the express terms of the plan.  The Ninth Circuit held that a fiduciary who invests in employer stock, under those circumstances, "is presumed to have acted consistently with ERISA." <u>Id</u>. at 1097.  To rebut that presumption, the plaintiff must show that the fiduciary could not have "believed reasonably that continued adherence to the plan's terms was in keeping with the settlor's expectations of how a prudent trustee would operate." <u>Id</u>.  Defendants contend that because the Hollishare Plan directs the Trustees to invest the Plan's assets

15

1  in JDS shares, and because the Plan also specifies how those shares

2  are to be valued, defendants are insulated from liability for

3  following the plan.  Their argument is not dispositive.

4      First, as plaintiffs note, the court in <u>Wright</u> did not hold

5  that by following the plan's terms, those with fiduciary duties

6  would not be liable under ERISA.  Indeed, <u>Wright</u>'s explanation

7  directly contradicts defendants' contention.  The <u>Wright</u> court

8  explained that "ERISA requires that fiduciaries discharge their

9  duties in accordance with the terms of the plan, except when such

10 terms conflict with Titles I or IV of ERISA." <u>Id</u>. at 1094.  Where,

11 as here, plaintiffs contend that the terms of the plan are unlawful

12 and inconsistent with ERISA, the Settlor Doctrine does not dispose

13 of plaintiffs' claims.  In sum, even if the plan's terms dictated

14 how the JDS shares were to be valued ("book value" rather than fair

15 market value), plaintiffs maintain that those terms are unlawful.

16 That contention, resting in part in a factual determination of fair

17 market value, cannot be resolved on a motion to dismiss.

18     Moreover, plaintiffs allege that defendants sold assets to JDS

19 for less than adequate consideration in violation of 29 U.S.C.

20 §§ 1106, 1108(e), allowed assets of the Plan to inure to the

21 benefit of JDS in violation of 29 U.S.C. § 1103, and administered

22 improper QDROS in violation of ERISA.  Because all such conduct

23 would violate ERISA, the Settlor Doctrine is irrelevant.

24     Secondly, the court cannot dispose of plaintiffs' ERISA claims

25 under the Settlor Doctrine because defendants are charged with more

26 than "having administered the Plan in compliance with its express

16

terms." Plaintiffs' claims attack more than the fundamental design of the Plan, they attack defendants' administration of the Plan. Although plaintiffs challenge the method under which the Plan provides the JDS shares are to be valued, they also allege that defendants failed to investigate whether book value reflects the true value of the shares. <u>See</u> Ellis Compl. at 6. They also allege that defendants resold plaintiffs' shares to JDS at a price not reflecting fair market value, at their expense and for JDS' benefit. <u>Id</u>. at 7. Finally, Ellis charges defendants with failing to correctly "qualify" the state court domestic relations orders. All these accusations pertain to the administration of the Plan rather than its design.

For the forgoing reasons, defendants' reliance on the Settlor Doctrine is unavailing.

**E.   JDS AS A DE FACTO FIDUCIARY**

Defendants urge the court to dismiss JDS from the suit because they claim JDS is not a fiduciary pursuant to the plan terms and under ERISA. Plaintiffs' disagree. I examine the parties' contentions.

Plaintiffs allege that:

JDS is a parent company of Hollister and a <u>de facto</u> fiduciary of the Plan by their ability to control both management and disposition of trust fund assets, to artificially limit the value of JDS shares to book value (even if the fair market value substantially exceeds that amount), to retain the right to buy all shares of JDS stock at book value, and to limit the pool of available buyers.

Ellis Compl. at 7.  Dimaro Compl. at 3.

17

1   Elsewhere, plaintiffs allege that the Articles of Incorporation:

2       grant JDS a right of first refusal, a buy-back
3       provision, and a restriction, and a restriction on
        ownership of their common stock.

4   Id.

5       According to plaintiffs, the Hollishare Trust agreement

6   "artificially defines the market value of the common shares of

7   Hollister," and because "JDS retains the right to buy all shares

8   of JDS stock" at this artificial value, defendants are ultimately

9   able to "use the plan as a personal holding company, and as a

10  billion dollar shelter." Id. Defendants nevertheless argue that

11  JDS lacks the discretionary power or authority to cause Hollishare

12  to sell its JDS shares, and that JDS "has no control whatsoever

13  over Hollishare's transaction." Ellis Compl. at 3, 9, 10.

14  Defendants point out that the Articles of Incorporation establish

15  the transfer restrictions that limit ownership of JDS shares, and

16  that JDS' repurchase right is triggered only if and when a holder

17  of JDS common shares "desires or intends to transfer" those shares.

18  According to defendants, plaintiffs fail to allege that JDS has

19  instructed Hollishare Trustees whether or when they should

20  effectuate transactions in JDS common shares . . . . Under

21  ERISA, "[A] person is a fiduciary with respect to a plan to the

22  extent (i) he exercises any discretionary authority or

23  discretionary control respecting management of such plan or

24  exercises any authority or control respecting management or

25  disposition of its assets . . . or (iii) he has any

26  discretionary responsibility in the administration of such plan."

29 U.S.C. § 1002(21)(A).  ERISA's definition of "fiduciary" is functional rather than formal.  <u>See</u> <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248 (1993); <u>Kayes v. Pacific Lumber Co.</u>, 51 F.3d 1449, 1459 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 914 (1995).  Thus, if JDS in fact exercised any discretionary authority over plan assets, it is an ERISA fiduciary, whether the Plan itself named it as such. <u>See</u> <u>Yeseta v. Baima</u>, 837 F.2d 380, 386 (9th Cir. 1988)(holding that a person who withdraws money from a pension plan and places it into the company's account in order to pay operating expenses is a fiduciary).  Put differently, a "de facto" fiduciary may be liable even if it lacks formal power to control or manage a plan, but nonetheless informally exercises the requisite "discretionary control" over plan management and administration.

Plaintiffs have alleged facts which suggest that JDS may be considered a de facto fiduciary.  The parties do not dispute that JDS' Articles of Incorporation contain a share transfer restriction that limits ownership of shares to JDS, and that JDS had the absolute right to buy any and all JDS shares that are offered for sale by anyone.  Plaintiffs allege that the arrangement is to their determent and JDS' benefit.

The allegations appear to support plaintiffs' contention that JDS controls the market for Hollishare and the price of the shares. Given the "scheme" alleged by plaintiffs between the defendants, the court cannot credit defendants' argument that JDS is not a fiduciary because its "repurchase right is triggered only if and when a holder of JDS common shares desires or intends to transfer

1  those shares."  Rather, this fact would appear to support a finding

2  that JDS is able to "exercise authority or control respecting

3  management or disposition" of Hollishare assets.  29 U.S.C.

4  § 1002(21)(A).

5      The court is bound to give plaintiffs the benefit of every

6  reasonable inference to be drawn from the "well-pleaded"

7  allegations of the complaint.  <u>See</u> <u>Retail Clerks Intern. Ass'n,</u>

8  <u>Local 1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).

9  Thus, plaintiffs need not necessarily plead a particular fact if

10  that fact is a reasonable inference from facts properly alleged.

11  <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Wheeldin v. Wheeler</u>, 373 U.S. 647, 648 (1963)

12  (inferring facts from allegations of complaint).  Reading all of

13  plaintiffs' allegations in the most favorable light to plaintiff,

14  the inference is that JDS was part of this scheme to undervalue the

15  JDS stock, to limit the market of buyers, and to keep it within the

16  defendants' control.  Under the pleadings, JDS is a de facto

17  fiduciary.

18  **F.   OTHER NAMED DEFENDANTS**

19      Defendants move to dismiss a number of the individually named

20  defendants.

21      **1.  <u>Michael Winn, Donna Matson, and Alan F. Herbert</u>**

22      Defendants have tendered evidence suggesting that Winn,

23  Matson, and Herbert have never been trustees or fiduciaries of

24  Hollishare and have not exercised discretionary control over

25  ////

26  ////

1  Hollishare's assets.   Saxon Dec., Ex. A at ¶ 6.[14]   Ellis does not
2  oppose this motion, and thus, it will be granted with respect to
3  her.   Dimaro and Lavick, however, ask the court to continue the
4  defendants' motion until the close of discovery.   They direct the
5  court to a newsletter for Hollishare which they claim "identifies
6  Winn, Matson and Herbert as trustees of the plan."   Hubbard Dec.,
7  Ex. A.

8      The court has examined that document and it appears that
9  defendants are correct in asserting that the trust referred to in
10 that article is not Hollishare, but a separate trust which holds
11 shares of the firm of John Dickinson Schneider.   Because plaintiffs
12 have alleged a complex scheme between JDS and Hollishare, the court
13 at this juncture will defer resolution of this portion of the
14 motion to permit plaintiffs discovery as to the relationship
15 between Hollishare and Winn, Matson and Herbert.   Plaintiffs shall
16 file a further opposition to the motion or a concession of non-
17 opposition not later than forty five days from the date of this
18 order.   If plaintiffs file a further opposition, defendants are
19 granted twenty days to respond.   That portion of defendants' motion
20 will then stand submitted unless the court orders further oral
21 argument.
22 ////
23 ////
24

25      [14]   Of course, a motion to dismiss tests the pleadings.
   Accordingly, the court must treat the motion as one for summary
26 judgment.

21

### 2.  **Loretta Stimpinski**

Defendants move to dismiss Stimpinski from these law suits. Defendants tender evidence suggesting that Stempinski is not a current Trustee of the Plan.  <u>See</u> n.14.  She admits that she was a Trustee of the Plan from 1974-1978, over twenty-seven years ago. Saxon Dec., Ex. A at ¶ 6.  Plaintiff Ellis does not oppose this motion, and thus it will be granted with respect to Ellis.

Plaintiffs Dimaro and Lavick do not dispute that Dimaro worked for Hollister from December 28, 1992 to September 30, 1999 and that Lavick worked for Hollister from November 15, 1995 to January 7, 2000.  Dimaro and Lavick, however, oppose this motion because they argue that Stempinski should still be held liable under ERISA.  I cannot agree.

ERISA imposes a statute of limitations on claims alleging a breach of fiduciary duty.  Section 413 provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

The plaintiffs filed their breach of fiduciary claim against defendants, including Stempenski, in August 2005, when they claim

they first had actual knowledge of any breaches from their counsel. It is undisputed, however, that Stempinski was last a trustee in 1978.  Even given the requirement that the court give all reasonable inferences to plaintiffs' pleadings, nothing suggests that once she resigned as a plan trustee, Stempinski had any responsibility for the policies, operations and administration of Hollishare.  Because plaintiffs have failed to bring their claim within six years of 1978, when she was last a trustee and administrator of the Plan, their claim is barred, unless they allege that Stempinski's alleged breach involved "fraud or concealment." Because plaintiffs fail to allege fraud, plaintiffs' claim against Stempinski is barred by § 413 of ERISA.  See Barker v. American Mobil Power Corp., 64 F.3d 1397, 1401 (9th Cir. 1995).[15]  For the reasons stated above, all claims against Stempinski are dismissed with prejudice.

### III.

### CONCLUSION

Accordingly, the court hereby ORDERS as follows:

1.  The motion to dismiss Stempinski is GRANTED.

2.  Resolution of the motions of Winn, Matson, and Herbert is DEFERRED;

---

[15]  The Ninth Circuit found that the district court did not err where plaintiffs did not bring their action within six years of the trustees' resignation.  Plaintiffs' claims were barred, unless they could show that trustees' alleged breach involved "fraud or concealment."  Finding that the trustees did not commit fraud, the court concluded that the plaintiffs' claim did not fall within the "fraud or concealment" exception to ERISA's statute of limitations and that therefore, the claim was barred.

1    3.  All other motions are DENIED.

2    IT IS SO ORDERED.

3    DATED:  April 12, 2006

4                                   /s/Lawrence K. Karlton
5                                   LAWRENCE K. KARLTON
                                    SENIOR JUDGE
6                                   UNITED STATES DISTRICT COURT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26